1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RAJ CHRISTOPHER GUPTA,

11             Plaintiff,                    No. CIV S-03-0393 MCE KJM P

12       vs.

13   HAROLD F. GREEN,

14             Defendant.              <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16             Plaintiff is a former state prisoner proceeding with an action for violation of civil

17   rights under 42 U.S.C. § 1983.  Defendants Cook, Evans, Green and Huffman filed a motion for

18   summary judgment on July 29, 2005.  Plaintiff filed a cross-motion for summary judgment on

19   October 24, 2005.  Both motions are pending before the court.

20   I.  <u>Summary Judgment Standard</u>

21             Summary judgment is appropriate when it is demonstrated that there exists "no

22   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

23   matter of law."  Fed. R. Civ. P. 56(c).

24   /////

25   /////

26   /////

                                    1

1        Under summary judgment practice, the moving party

2        always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the

3        pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes

4        demonstrate the absence of a genuine issue of material fact.

5  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c). "[W]here the

6  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

7  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

8  to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered,

9  after adequate time for discovery and upon motion, against a party who fails to make a showing

10  sufficient to establish the existence of an element essential to that party's case, and on which that

11  party will bear the burden of proof at trial. See id. at 322.  "[A] complete failure of proof

12  concerning an essential element of the nonmoving party's case necessarily renders all other facts

13  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

14  whatever is before the district court demonstrates that the standard for entry of summary

15  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

16        If the moving party meets its initial responsibility, the burden then shifts to the

17  opposing party to establish that a genuine issue as to any material fact actually does exist. See

18  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

19  establish the existence of this factual dispute, the opposing party may not rely upon the

20  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

21  form of affidavits, and/or admissible discovery material, in support of its contention that the

22  dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

23  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

24  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

25  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

26  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

2   1436 (9th Cir. 1987).

3            In the endeavor to establish the existence of a factual dispute, the opposing party

4   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8   genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9   committee's note on 1963 amendments).

10            In resolving the summary judgment motion, the court examines the pleadings,

11   depositions, answers to interrogatories and admissions on file, together with the affidavits, if any.

12   Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477

13   U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court

14   must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless,

15   inferences are not drawn out of the air, and it is the opposing party's obligation to produce a

16   factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines,

17   602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally,

18   to demonstrate a genuine issue, the opposing party "must do more than simply show that there is

19   some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

20   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

21   trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22            On May 10, 2004, the court advised plaintiff of the requirements for opposing a

23   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

24   F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

25   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

26   /////

II.  Plaintiff's Claim

_____In his complaint, which is signed under the penalty of perjury, plaintiff alleges that defendants Cook, Evans, Green and Huffman caused plaintiff to be transferred from High Desert State Prison on April 10, 2002.  Plaintiff's ultimate destination was Ironwood State Prison. Plaintiff claims the transfer was effectuated in retaliation for lawsuits filed by plaintiff against defendants Cook and Green, with the result that plaintiff was deprived of property and the chance to continue in a meaningful job assignment.  Compl. ¶¶ 55-95, 104-107, 110.  Plaintiff claims defendants' actions violated his First Amendment rights.  Id. ¶¶ 115-116.[1]  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1)  An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

III.  Analysis

Each party asserts that there is no genuine issue of material fact with respect to whether plaintiff was transferred by defendants Green, Evans, Huffman and Cook based on his filing lawsuits against defendants Green and Cook.  Plaintiff argues that all the evidence shows he was transferred for filing the lawsuits.  Defendants assert there is no evidence indicating plaintiff was transferred for filing the lawsuits.

/////

/////

/////

/////

---

[1]  In his complaint, plaintiff identifies a second cause of action asserting a violation of state law committed by defendant Cervantes.  On April 14, 2004, the court screened plaintiff's complaint under 28 U.S.C. § 1915A(a), and determined that plaintiff's complaint does not state a claim upon which relief can be granted against defendant Cervantes.

In a memo dated February 1, 2002 addressed to defendant Evans, defendant Green requested that plaintiff be transferred, in part, due to his "abusive paperwork."  The memo reads as follows:

> This is per our conversation concerning Inmate Gupta . . .
>
> Inmate GUPTA has been a disruptive influence on the Facility A Chapel program by fomenting negative and untrue statements about me, personally, and about our program.  His statements include false allegations that I demonstrate religious and racial bias.
>
> I have previously documented a concern that Inmate GUPTA presented a physical threat to my safety and security when he publicly stated that he was going to "get me."[2]  When later questioned, he said he meant in the legal sense.  However, based on his abusive paperwork, I am unconvinced about the nature of his threat.
>
> Therefore, I request that Inmate Gupta be considered for transfer to another institution. . .

Def'ts' Statement of Undisputed Facts (SUF), Ex. D.  Later, defendant Green informed defendant Evans that plaintiff had initiated a lawsuit against Green, among other things.  Pl.'s

---

[2]  A letter from Green to Correctional Captain G. McCormick dated February 6, 1999 reads as follows:

> I recently terminated inmate GUPTA . . .from his work assignment as a clerk in the Facility "A" Chapel due to his inability to perform the tasks required by the position.
>
> I was told by [name redacted] who I deem to be highly reliable, that Inmate GUPTA is overly upset with the termination.  During GUPTA's assignment he displayed irrational behavior with both actions and deeds.
>
> Due to Inmate GUPTA's unstable behavior, I feel that he is a potential threat to my personal safety, and perhaps, to the safety and security of this Facility.
>
> Therefore, I request that Inmate GUPTA be re-housed in Administrative Segregation and recommend that ICC consider him for transfer to another institution.

SUF, Ex. C.

Interrogatories And Admissions On File In Supp. Mot. for Summ. J. (Pl.'s Discovery) at 7:2-8. Evans then directed to initiate transfer proceedings against plaintiff. Compl. at 7:11-18.

At the transfer hearing, plaintiff alleges that defendant Cook, who sat on the hearing panel along with defendant Huffman, specifically told plaintiff the following:

1) "Nobody likes you because you filed that lawsuit [against Cook]." Id. at 10:15-18.

2) "If you hadn't filed that lawsuit against me, then maybe I'd wait until your Annual Review in August to put you up for transfer, or maybe even have allowed you to Continue Present Program." Id. at 10:25-28.

During the hearing, plaintiff alleges Huffman told plaintiff: "Some Staff don't want you here at High Desert because of the two civil lawsuits you've filed against some of the HDSP staff so they want you transferred out." Id. at 12:5-10.

The decision issued by Huffman and Cook following the transfer hearing reads, in part, as follows:

> A letter received from the protestant chaplain, Dr. Green, that
> states that GUPTA is a disruptive influence in the Facility Chapel
> as well as a documented concern that GUPTA is a physical threat
> to the safety and security of Dr. Green. . .The committee requests
> that GUPTA be transferred to CTF II/RJD III (CUST/TIM/LIF) to
> avoid any safety or security issues. . .

SUF, Ex. G.  After the hearing, Huffman and Cook recommended plaintiff for transfer. Id.

Shortly before plaintiff was transferred, plaintiff alleges he had a conversation with defendant Cook in which Cook again stated that no one at High Desert likes plaintiff because of the lawsuit filed by plaintiff against defendant Cook. Compl. at 16:9-12. When plaintiff asked Cook who had indicated that they dislike plaintiff, Cook identified defendant Green. Id. at 16:15-16.

These facts taken from both parties' filings demonstrate there is a triable issue with respect to whether plaintiff's transfer resulted from the actions of defendants Green, Evans,

1   Huffman and Cook,[3] based on plaintiff filing lawsuits against defendant Green and Evans, or

2   alternately a negative relationship between plaintiff and Green that created a legitimate

3   penological reason for transfer.  Because there is a genuine issue of material fact with respect to

4   at least the fifth element of plaintiff's First Amendment claim, plaintiff is not entitled to

5   summary judgment.  Rhodes, 408 F.3d at 567-68.

6            Defendants argue there is no genuine issue of material fact as to whether plaintiff

7   suffered any adverse action in connection with being transferred.  Reply at 2:21-22; cf. Rhodes,

8   408 F.3d at 567-68 (first element).  However, plaintiff lost his prison job at High Desert due to

9   the transfer.  Plaintiff alleges that he indicated, prior to transfer, that he wished to maintain his

10  job assignment in the High Desert Education Department:

11            I don't want to transfer, I want to continue my present program at
             High Desert for one more year.  I have a good program going now,
12            working in Education as a Clerk in the Mathematics Classroom.

13  Compl. at 8:5-9.  Defendants fail to cite any authority for the proposition that losing one's job

14  due to an involuntary transfer does not qualify the transfer as an "adverse action."  Given

15  plaintiff's assertion of the benefits associated with his job, and because the record is not clear as

16  to what sort of job, if any, plaintiff obtained after transfer, there is a genuine issue of material fact

17  concerning the "adverse action" element of plaintiff's claim.

18            Defendants also argue there is no genuine issue of material fact with respect to

19  whether plaintiff's First Amendment rights were chilled by his being transferred.  Reply at 3:3-6;

20  Rhodes, 408 F.3d at 567-68 (fourth element).  Plaintiff does not expressly alleged that his First

21  Amendment rights were chilled.  However, as noted above, plaintiff does allege injury as a result

22  of being transferred.  The Ninth Circuit has recognized that harm that is more than minimal will

23

24      [3] Defendants argue that plaintiff was transferred by E. Cervantes.  Reply to Opp'n to
    Mot. for Summ. J. (Reply) at 2:23-3:2; SUF, Ex. H.  However, Exhibit H merely shows that
25  Cervantes decided that plaintiff would initially go to Folsom State Prison.  Nothing in that
    document suggests Cervantes made any determination as to whether plaintiff should have been
26  transferred.

1   almost always have a chilling effect.  <u>Rhodes</u>, 408 F.3d at 568 n.11.  In this case, the harm

2   alleged by plaintiff as a result of his being transferred, including the loss of his job in the

3   education department, is significant enough to create a triable issue as to whether plaintiff's First

4   Amendment rights were chilled as a result of his transfer.

5   _____Finally, defendants argue there is no genuine issue of fact as to whether plaintiff's

6   transfer from High Desert reasonably advanced a legitimate correctional goal.  <u>Rhodes</u>, 408 F.3d

7   at 567-68 (fifth element).[4]  Defendants argue that transferring plaintiff reasonably advanced the

8   legitimate goals of: (1) stopping plaintiff from assaulting defendant Green, (2) easing Green's

9   fear of being attacked by plaintiff, and (3) precluding the kind of incidents that could lead to

10  future lawsuits and grievances initiated by plaintiff against Green.  <u>Reply</u> at 2:16-20.

11          Defendants have not presented anything to support their position there was a

12  reasonable probability that plaintiff would have assaulted Green had plaintiff stayed at High

13  Desert, other than Green's own statements.  Among other things, defendants have not shown that

14  plaintiff has any proclivity toward staff assault.  While there is evidence that plaintiff told Green

15  at one point that plaintiff was going to "get [Green]," there is also evidence indicating plaintiff

16  meant he was going to sue Green.  SUF, Exs. C, D.

17          There also is a genuine issue of material fact with respect to whether defendant

18  Green actually was afraid plaintiff would assault Green.  The most recent evidence, the February

19  1, 2002 memo, fails to establish that Green was afraid of plaintiff.  It merely shows Green was

20  not necessarily convinced that plaintiff meant it when he said he would only express his

21  displeasure with Green through legal action.  SUF, Ex. D.

22          Finally, defendants have not shown that there is no triable factual issue as to

23  whether transferring plaintiff would advance the legitimate goal of preventing interactions that

24  could lead to future lawsuits and grievances filed by plaintiff against defendant Green.  Other

25  _____

26          [4] Defendants' argument in this regard is the flip side of plaintiff's argument.  <u>See</u> pages
    4-7 <u>supra</u>.

1  than the case at issue, the record indicates plaintiff has filed only one other lawsuit against Green.

2  See Gupta v. Green, No. Civ S-00-0124 GEB JFM (E.D. Cal.).[5]  There is no indication as to how

3  many grievances, if any, plaintiff has filed against defendant Green that do not concern the facts

4  at issue in this case.

5  IV.  Conclusion

6         For the foregoing reasons, the court will recommend that both parties' motions for

7  summary judgment be denied.  If the findings and recommendations herein are adopted by the

8  district judge assigned to this case, the court then will set dates for the filing of pretrial

9  statements and trial.

10         In accordance with the above, IT IS HEREBY RECOMMENDED that:

11         1.  The July 29, 2005 motion for summary judgment brought by defendants Cook,

12  Evans, Green and Huffman be denied; and

13         2.  Plaintiff's October 24, 2005 cross-motion for summary judgement be denied.

14  /////
15  /////
16  /////
17  /////
18  /////
19  /////
20  /////
21  /////
22  /////
23  /////
24  /////

25  —————————————————

26     [5]  Plaintiff has volunteered that he filed this suit, and defendants have not indicated that he has filed more than this one.

9

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 1, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

1
gupt0393.57